Robert T. Lemen (Bar No. 94111)
Thomas N. Fay (Bar No. 290907)
MURTAUGH TREGLIA STERN &
DEILY LLP
2603 Main Street, Penthouse
Irvine, California 92614-6232
(949) 794-4000 / Fax (949) 794-4099
rlemen@murtaughlaw.com
tfay@murtaughlaw.com

Attorneys for Plaintiff/Cross-Defendant
**HEAT FACTORY USA, INC.**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEAT FACTORY USA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SCHAWBEL TECHNOLOGIES, LLC, a Massachusetts limited liability company; and DOES 1 through 50,<br><br>Defendants. | Case No. 18CV1941WQHBGS<br><br>**ANSWER TO CROSS-COMPLAINT** |
| SCHAWBEL TECHNOLOGIES LLC, a Massachusetts limited liability company,<br><br>Cross-Complainant,<br><br>v.<br><br>HEAT FACTORY USA, INC., a California corporation,<br><br>Cross-Defendant. | |

Cross-Defendant, The Heat Factory USA, Inc. ("Cross-Defendant" or "Heat Factory"), hereby responds to Schawbel Technologies LLC's ("Cross-Complainant" or "Schawbel") Cross-Complaint (the "Cross-Complaint") as

follows:

## INTRODUCTION

Heat Factory denies the allegations contained in the unnumbered first paragraph of the Cross-Complaint entitled "Introduction."

## PARTIES

1. Heat Factory lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 1, and on that basis denies each and every allegation contained therein.

2. Heat Factory admits the allegations contained in Paragraph 2.

3. Heat Factory denies the allegations contained in Paragraph 3, and objects to their inclusion in an action in federal court.

4. Heat Factory denies the allegations contained in Paragraph 4.

## JURISDICTION AND VENUE

5. Heat Factory admits the allegations contained in Paragraph 5.

6. Heat Factory admits that it sells goods in Massachusetts but denies the remaining allegations contained in Paragraph 6.

7. Heat Factory admits the allegations contained in Paragraph 7.

8. Heat Factory admits that Sections 8.05 and 12.8 of the APA (as used herein, "APA shall have the definition ascribed in the Cross-Complaint) and License Agreement (as used herein, "License Agreement" shall have the definition ascribed in the Cross-Complaint), respectively, set forth a choice of law clause which selects the laws of the Commonwealth of Massachusetts as the law governing the APA and License Agreement but denies the remaining allegations contained in Paragraph 8.

9. Heat Factory admits the allegations contained in Paragraph 9.

## GENERAL ALLEGATIONS
## THE ASSET PURCHASE AGREEMENT

10. Heat Factory lacks sufficient knowledge or information to form a

1  belief as to the truth of the allegations of Paragraph 10, and on that basis denies
2  each and every allegation contained therein.

3      11.    Heat Factory lacks sufficient knowledge or information to form a
4  belief as to the truth of the allegations of Paragraph 11, and on that basis denies
5  each and every allegation contained therein.

6      12.    Heat Factory admits the allegations contained in Paragraph 12.

7      13.    Heat Factory lacks sufficient knowledge or information to form a
8  belief as to the truth of the allegations of Paragraph 13 as the phrase "the
9  patented technology referenced herein" is vague and ambiguous, and on that
10 basis denies each and every allegation contained therein.

11     14.    Heat Factory admits that Heat Factory executed the APA on July 18,
12 2017, but denies the remaining allegations contained in Paragraph 14.

13     15.    Heat Factory admits that pursuant to the terms of the APA,
14 Schawbel agreed to sell to Heat Factory certain heated insoles, battery packs, and
15 related heating products it had in inventory as further detailed on Schedule A of
16 the APA. Heat Factory admits that Exhibit 1 of the Cross-Complaint appears to
17 be a true and accurate copy of the APA. Heat Factory lacks sufficient knowledge
18 or information to form a belief as to the truth of the remaining allegations of
19 Paragraph 15, and on that basis denies each and every remaining allegation
20 contained therein.

21     16.    Heat Factory admits that Heat Factory agreed to pay Schawbel
22 $3,700,000 for the Inventory (as that term is defined in the APA), and according
23 to the payment schedules set forth in this paragraph, pursuant to the other terms
24 and conditions set forth in the APA but denies the remaining allegations
25 contained in Paragraph 16.

26     17.    Heat Factory admits that Heat Factory did not transmit any funds to
27 Schawbel on January 10, 2018, but denies that any funds were due to Schawbel
28 and denies the allegations in Paragraph 17.

18. Heat Factory denies the allegations contained in Paragraph 18.

19. Heat Factory admits that Section 8.10 of the APA provides, among other things, for an award of attorney's fees and costs under certain circumstances but denies the remaining allegations contained in Paragraph 19.

## THE EXCLUSIVE PATENT LICENSE AGREEMENT

20. Heat Factory admits that Heat Factory executed the License Agreement on July 18, 2017, but denies the remaining allegations contained in Paragraph 20.

21. Heat Factory admits that pursuant to the terms of the License Agreement, Schawbel agreed, among other things, to provide an exclusive license to Heat Factory of certain patents, technological information, and general know-how. Heat Factory lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 21, inclusive of footnote 2, and on that basis denies each and every remaining allegation contained therein.

22. Heat Factory admits that Appendix C (not Exhibit C) to the License Agreement identifies the patents and patent applications licensed under the License Agreement. Heat Factory admits that Exhibit 2 of the Cross-Complaint appears to be a true and accurate copy of the License Agreement. Heat Factory lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 22, in that "the series of Patent claims" is vague and ambiguous, and on that basis denies each and every remaining allegation contained therein.

23. Heat Factory admits that per Section 2.1(a)(i) of License Agreement, the license granted to Heat Factory therein included the exclusive right to make and sell "Products" (as that term is defined in the License Agreement). Heat Factory admits that the definition of "Products" includes, among other things, products which "absent the license granted hereunder would

infringe, or is covered by, one or more Claims of the Patents," but denies the remaining allegations contained in Paragraph 23.

24. Heat Factory admits that, subject to the other terms and conditions of the License Agreement, Section 3.1 of the License Agreement provides, among other things, for Heat Factory's payment of monthly royalty payments to Schawbel, beginning January 1, 2018, which were calculated as a percentage of Net Sales (as defined in the License Agreement), but denies the remaining allegations contained in Paragraph 24

25. Heat Factory admits that pursuant to Section 3.2 of the License Agreement, Heat Factory guaranteed, subject to the other terms and conditions set forth in the License Agreement, an aggregate minimum royalty payment totaling $300,000 to be payable monthly, commencing on January 15, 2018 and continuing until June 15, 2018, but denies the remaining allegations contained in Paragraph 25.

26. Heat Factory admits that Section 3.2 of the License Agreement provides, among other things, for the payment schedule set forth in paragraph 26, subject to the other terms and conditions of the License Agreement, but denies the remaining allegations contained in Paragraph 26.

27. Heat Factory admits that Heat Factory paid the $50,000 Minimum Royalty Payment due on January 15, 2018, but denies the remaining allegations contained in Paragraph 27.

28. Heat Factory admits that the License Agreement contains the provisions in question, but denies the remaining allegations contained in Paragraph 28.

29. Heat Factory admits that the License Agreement provides that Schawbel may terminate the License Agreement, upon certain preconditions and other limitations, in the event of certain defaults by Heat Factory under the APA, but denies the remaining allegations contained in Paragraph 29.

30. Heat Factory admits that the License Agreement requires Heat Factory to make certain payments due under the APA, but denies the remaining allegations contained in Paragraph 30.

31. Heat Factory admits that Section 9.4(a) of the License Agreement provides that Schawbel may terminate the License Agreement, upon certain preconditions and other limitations, in the event of certain defaults by Heat Factory under the APA, but denies the remaining allegations contained in Paragraph 31.

32. Heat Factory admits that the License Agreement contains the provisions in questions, but denies the remaining allegations contained in Paragraph 32.

33. Heat Factory admits that Section 9.4(a) of the License Agreement includes the language quoted in this paragraph, among other terms, but denies the remaining allegations contained in Paragraph 33.

34. Heat Factory admits that Section 9.6 of the License Agreement includes the language quoted in this paragraph, among other terms, but denies the remaining allegations contained in Paragraph 34.

35. Heat Factory admits that Section 9.6 of the License Agreement includes the language quoted in this paragraph, among other terms, but denies the remaining allegations contained in Paragraph 35.

36. Heat Factory admits that Section 9.7 of the License Agreement includes the language quoted in this paragraph, among other terms, but denies the remaining allegations contained in Paragraph 36.

37. Heat Factory admits the Licensing Agreement provides for an award of attorney's fees and costs under certain circumstances, but denies the remaining allegations contained in Paragraph 37.

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT – ASSET PURCHASE AGREEMENT)**

38. Heat Factory repeats and incorporates by reference its responses to the allegations set forth in Paragraphs 1 through 37.

39. Heat Factory lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph 39, and on that basis denies each and every allegation contained therein.

40. Heat Factory denies the allegations contained in Paragraph 40.

41. Heat Factory denies the allegations contained in Paragraph 41.

42. Heat Factory denies the allegations contained in Paragraph 42.

43. Heat Factory denies the allegations contained in Paragraph 43.

44. Heat Factory denies the allegations contained in Paragraph 44.

45. Heat Factory admits it received a letter from Schawbel, dated December 11, 2017, stating, among other things, that "Schawbel Technologies has not received the Purchase Price Payment due on or before December 10, 2017," but denies the remaining allegations contained in Paragraph 45.

46. Heat Factory denies the allegations contained in Paragraph 46.

47. Heat Factory denies the allegations contained in Paragraph 47.

48. Heat Factory admits that Heat Factory did not transmit any funds to Schawbel on January 10, 2018, but denies that any funds were due to Schawbel and denies the remaining allegations contained in Paragraph 48.

49. Heat Factory admits it received a letter from Schawbel, dated January 13, 2018, stating, among other things, that it had not received the "Purchase Price Payment due on or before January 10, 2018. The gross amount due as set forth in the Agreement is $600,000…," but denies the remaining allegations contained in Paragraph 49.

50. Heat Factory admits that Heat Factory did not transmit any funds to Schawbel on January 10, 2018, but denies that any funds were due to Schawbel and denies the remaining allegations contained in Paragraph 50.

51. Heat Factory denies the allegations contained in Paragraph 51.

52. Heat Factory denies the allegations contained in Paragraph 52.

53. Heat Factory denies the allegations contained in Paragraph 53.

54. Heat Factory denies the allegations contained in Paragraph 54.

55. Heat Factory denies the allegations contained in Paragraph 55.

## SECOND CAUSE OF ACTION – LICENSE AGREEMENT
## (BREACH OF CONTRACT – LICENSE AGREEMENT)

56. Heat Factory repeats and incorporates by reference its responses to the allegations set forth in Paragraphs 1 through 55.

57. Heat Factory lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph 57, and on that basis denies each and every allegation contained therein.

58. Heat Factory admits that it has sold inventory and products purchased under the APA, but otherwise denies the allegations contained in Paragraph 58.

59. Heat Factory denies the allegations contained in Paragraph 59.

60. Heat Factory admits that section 3.2 of the License Agreement requires Heat Factory to make certain payments, but otherwise denies the allegations contained in Paragraph 60.

61. Heat Factory denies the allegations contained in Paragraph 61.

62. Heat Factory denies the allegations contained in Paragraph 62.

63. Heat Factory lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph 63, and on that basis denies each and every allegation contained therein.

64. Heat Factory denies the allegations contained in Paragraph 64.

65. Heat Factory denies the allegations contained in Paragraph 65.

66. Heat Factory lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph 66, and on that basis denies each and every allegation contained therein.

67. Heat Factory denies the allegations contained in Paragraph 67.

68. Heat Factory denies the allegations contained in Paragraph 68.

69. Heat Factory denies the allegations contained in Paragraph 69.

70. Heat Factory denies the allegations contained in Paragraph 70.

## THIRD CAUSE OF ACTION

### (PATENT INFRINGEMENT – 35 U.S.C. § 281 – THE LICENSE AGREEMENT)

71. Heat Factory repeats and incorporates by reference its responses to the allegations set forth in Paragraphs 1 through 70.

72. Heat Factory admits it is informed and believes that Schawbel is the owner of the Patent Rights (as defined in the License Agreement) but lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 72, and on that basis denies each and every remaining allegation contained therein.

73. Heat Factory admits it purchased the Inventory from Schawbel under the terms of the APA but lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 73, and on that basis denies each and every remaining allegation contained therein.

74. Heat Factory denies the allegations contained in Paragraph 74.

75. Heat Factory denies the allegations contained in Paragraph 75.

76. Heat Factory admits it received a letter from Schawbel, dated January 31, 2018, stating, among other things, that "the License Agreement is hereby terminated, effective immediately, pursuant to Section 9.4(a) thereof." Heat Factory admits that the letter attached as Exhibit 22 to the Cross-Complaint appears to be a copy of the said letter. Heat Factory denies the remaining allegations contained in Paragraph 76.

77. Heat Factory admits it received a letter from Schawbel, dated July 10, 2018, stating, among other things, that the License Agreement was

1  terminated. Heat Factory admits that the letter attached as Exhibit 23 to the Cross-Complaint appears to be a copy of the said letter. Heat Factory denies the remaining allegations contained in Paragraph 77.

78. Heat Factory denies the allegations contained in Paragraph 78.

79. Heat Factory denies the allegations contained in Paragraph 79.

80. Heat Factory denies the allegations contained in Paragraph 80.

81. Heat Factory denies the allegations contained in Paragraph 81.

82. Heat Factory denies the allegations contained in Paragraph 82.

83. Heat Factory denies the allegations contained in Paragraph 83.

84. Heat Factory denies the allegations contained in Paragraph 84.

85. Heat Factory denies the allegations contained in Paragraph 85.

86. Heat Factory denies the allegations contained in Paragraph 86.

87. Heat Factory denies the allegations contained in Paragraph 87.

88. Heat Factory denies the allegations contained in Paragraph 88.

## FOURTH CAUSE OF ACTION

## (DECLARATORY JUDGMENT – TERMINATION OF THE LICENSE AGREEMENT BASED ON APA NONPAYMENTS)

89. Heat Factory repeats and incorporates by reference its responses to the allegations set forth in Paragraphs 1 through 88.

90. Heat Factory admits that the License Agreement requires Heat Factory to make certain payments due under the APA, but denies the remaining allegations contained in Paragraph 90.

91. Heat Factory denies the allegations contained in Paragraph 91.

92. Heat Factory denies the allegations contained in Paragraph 92.

93. Heat Factory denies the allegations contained in Paragraph 93.

94. Heat Factory denies the allegations contained in Paragraph 94.

95. Heat Factory admits the allegations contained in Paragraph 95.

96. Heat Factory denies the allegations contained in Paragraph 96.

1  97. Heat Factory denies the allegations contained in Paragraph 97.

2  98. Heat Factory denies the allegations contained in Paragraph 98.

3  99. Heat Factory acknowledges that Schawbel requests a declaratory judgment, but denies that Schawbel is entitled to the declaratory judgment requested and therefore denies the allegations contained in Paragraph 99.

## FIFTH CAUSE OF ACTION

## (DECLARATORY JUDGMENT – TERMINATION OF THE LICENSE AGREEMENT BASED ON MINIMUM ROYALTY NONPAYMENT)

100. Heat Factory repeats and incorporates by reference its responses to the allegations set forth in Paragraphs 1 through 99.

101. Heat Factory admits that pursuant to Section 3.2 of the License Agreement, Heat Factory guaranteed, subject to the other terms and conditions set forth in the License Agreement, an aggregate minimum royalty payment totaling $300,000 to be payable monthly, commencing on January 15, 2018 and continuing until June 15, 2018, but denies the remaining allegations contained in Paragraph 101.

102. Heat Factory denies the allegations contained in Paragraph 102.

103. Heat Factory denies the allegations contained in Paragraph 103.

104. Heat Factory denies the allegations contained in Paragraph 104.

105. Heat Factory denies the allegations contained in Paragraph 105.

106. Heat Factory denies the allegations contained in Paragraph 106.

107. Heat Factory denies the allegations contained in Paragraph 107.

108. Heat Factory denies the allegations contained in Paragraph 108.

109. Heat Factory denies the allegations contained in Paragraph 109.

110. Heat Factory acknowledges that Schawbel requests a declaratory judgment, but denies that Schawbel is entitled to the declaratory judgment requested and therefore denies the allegations contained in Paragraph 110.

///

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Schawbel's causes of action against Heat Factory are barred by the equitable doctrine of unclean hands.

### SECOND AFFIRMATIVE DEFENSE

Schawbel may not recover all or part of its claimed damages on the grounds that it has failed to mitigate its damages.

### THIRD AFFIRMATIVE DEFENSE

Schawbel's causes of action against Heat Factory are barred by the equitable doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Schawbel waived any rights it had with regard to the APA and License Agreement.

### FIFTH AFFIRMATIVE DEFENSE

Schawbel's unreasonable acts and omissions proximately caused or otherwise contributed to its own alleged damages, and therefore any recovery it might obtain in this action must be reduced on the basis of its proportionate fault.

### SIXTH AFFIRMATIVE DEFENSE

Heat Factory's performance under the APA and License Agreement alleged in the Cross-Complaint are excused because Schawbel's unreasonable and bad faith acts and omissions made it impossible and/or impracticable for Heat Factory to perform.

### SEVENTH AFFIRMATIVE DEFENSE

Heat Factory has performed all duties owed under the APA and License Agreement alleged in the Cross-Complaint, other than those duties which were prevented or excused, and therefore never breached said agreements.

### EIGHTH AFFIRMATIVE DEFENSE

Heat Factory's performance under the APA and License Agreement

alleged in the Cross-Complaint is excused in whole or in part because of Schawbel's prior breach(es) of contract.

### NINTH AFFIRMATIVE DEFENSE

Schawbel lacks standing to assert some or all of the claims set forth against Heat Factory in its Cross-Complaint and in the various agreements identified therein.

### TENTH AFFIRMATIVE DEFENSE

The consideration provided by Schawbel under the APA and License Agreement alleged in the Cross-Complaint was inferior to what was promised such that Heat Factory's performance under such agreements is excused in whole or in part.

### ELEVENTH AFFIRMATIVE DEFENSE

Schawbel owes money or other valuable consideration to Heat Factory, or has not properly credited payments made, and as a result, Heat Factory owes less than the amount claimed by Schawbel.

### TWELFTH AFFIRMATIVE DEFENSE

Schawbel made fraudulent, intentional, and/or negligent misrepresentations to Heat Factory with regard to the APA and License Agreement alleged in the Cross-Complaint, and therefore, any recovery it might obtain in this action must be reduced on the basis of its proportionate fault.

### THIRTEENTH AFFIRMATIVE DEFENSE

Heat Factory was prevented and/or excused from performance under the APA and License Agreement alleged in the Cross-Complaint due to an event of force majeure.

WHEREFORE, Cross-Defendant Heat Factory requests that this Court:

1. Dismiss the Cross-Complaint, and each count of the Cross-Complaint, with prejudice;

2. Award Heat Factory its attorneys' fees and costs, to the extent

1  permitted by law; and

2     3.   Award such other and further relief as the Court deems just and
3  proper.

5  Dated: September 18, 2018          MURTAUGH TREGLIA STERN &
                                      DEILY LLP

                                      By: _____
                                          Robert T. Lemen
                                          Thomas N. Fay
                                          Attorneys for Plaintiff/Cross-Defendant
                                          HEAT FACTORY USA. INC.

# CERTIFICATE OF SERVICE

I, the undersigned, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of 18 years, and not a party to the within action. I am an employee of or agent for MURTAUGH TREGLIA STERN & DEILY LLP, whose business address is 2603 Main Street, Penthouse, Irvine, California 92614-6232.

On September 18, 2018, I served the foregoing document(s):

**ANSWER OF CROSS-DEFENDANT HEAT FACTORY USA, INC. TO CROSS-COMPLAINT**

on the following parties in this action addressed as follows:

**SEE ATTACHED SERVICE LIST**

[X] *(BY ELECTRONIC FILING & SERVICE)* I served a true copy of each document to mconnolly@murthalaw.com; thutter@allenmatkins.com; daron@allenmatkins.com service via posting at the CM/ECF website on the internet and/or for filing of said documents electronically, pursuant to the court Order

Executed on September 18, 2018, at Irvine, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
**CYNTHIA DUFFY**

2030792

- 1 -

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |

**SERVICE LIST**
SCHAWBEL TECHNOLOGIES LLC v. THE HEAT FACTORY USA, INC.
USDC – SOUTHERN DISTRICT OF CALIFORNIA
CASE NO.: 18cv1941WQHBGS
Our File No.: 575-17581

| | | |
|---|---|---|
| 4 | Michael P. Connolly, Esq. | Attorneys for Plaintiff |
| 5 | MURTHA CULLINA LLP | **Schawbel Technologies LLC** |
|   | 99 High Street, 20th Floor | |
| 6 | Boston, MA 02110 | T: (617) 457-4000 |
|   |                  | mconnolly@murthalaw.com |
| 7 | Timothy M. Hutter, Esq. | Attorney for Plaintiff **Schawbel** |
|   | David E. Aron, Esq. | **Technologies, LLC** |
| 8 | Allen Matkins Leck Gamble Mallory & Natsis LLP | thutter@allenmatkins.com; |
| 9 | One America Plaza, 600 West Broadway, 27th Fl. | daron@allenmatkins.com |
| 10 | San Diego, CA 92101-0903 | Telephone: (619) 233-1155 |
|    |                          | Fax No.: (619) 233-1158 |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28